# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TYREK S. GARRY, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 06 C 1692 ) |
| TERRY MCCANN, | ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Tyrek S. Garry's ("Garry") petition for a writ of *habeas corpus*. For the reasons stated below, we deny Garry's petition for a writ of *habeas corpus* in its entirety.

## BACKGROUND

Following a jury trial in the Macon County Circuit Court, Illinois, ("Trial Court") Garry was convicted of home invasion, armed robbery, and armed violence. On January 14, 2000, Garry was subsequently sentenced to an extended-term of forty years in prison for the armed violence conviction, based on a prior Class X felony conviction, twenty five years in prison for the home invasion conviction, and twenty

1

five years in prison for the armed robbery conviction, with all sentences to run concurrently, and the Trial Court also ordered Garry to serve eighty five percent of his sentence, pursuant to the truth-in-sentencing provision in 730 ILCS 5/3-6-3(a)(2)(iii) upon agreeing with the jury's finding that Garry had inflicted great bodily harm upon the victim. Garry then appealed his conviction to the Illinois Appellate Court, Fourth District ("Illinois Appellate Court") and on July 6, 2001, the Illinois Appellate Court affirmed Garry's conviction. Garry then filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on October 3, 2001. While his direct appeal was pending, Garry filed a *pro se* post-conviction petition in the Circuit Court of Macon County on May 17, 2001, which was dismissed on March 24, 2003. The Illinois Appellate Court affirmed the dismissal on January 13, 2005 and the Illinois Supreme Court denied Garry's petition for leave to appeal on May 25, 2005. Garry filed the instant petition of writ of *habeas corpus* ("Petition") on March 28, 2006.

## LEGAL STANDARD

A district court may entertain a *habeas corpus* petition from a "person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254, a writ of *habeas corpus* will not be granted unless "the applicant has exhausted the remedies available in the courts of the State; . . . or there is an absence of available State corrective process; or . . .

circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1). *A habeas corpus* petition shall also not be granted:

> on behalf of a person in custody pursuant to the judgment of a State court . . . unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2). A decision by a state court is deemed to be "'contrary to' [the U.S. Supreme Court's] clearly established precedents if it 'applies a rule that contradicts the governing law set forth in [the Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from our precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A state court need not cite to Supreme Court cases in its decision, "so long as neither the reasoning nor the result of the" state court's decision contradicts such precedent. *Id.*

## DISCUSSION

In his petition for a writ of *habeas corpus*, Garry asserts the following claims: (1) the State knowingly and intentionally used perjured testimony (Claim 1); (2) ineffective assistance of trial counsel for not raising the issue of the State's knowing and intentional use of perjured testimony (Claim 2); (3) ineffective assistance of appellate counsel for not raising the issue of the State's knowing and intentional use of perjured testimony (Claim 3); (4) post-conviction counsel provided "inadequate assistance," (Pet. 6) (Claim 4); and (5) the law under which Garry received his extended-term sentence for home invasion violates the Illinois constitution (Claim 5).

Before a state prisoner can petition for a writ of *habeas corpus* in the federal courts, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerkel*, 526 U.S. 838, 845 (1999). This means that the petitioner must properly assert each claim at each and every level in the state court system, either on direct appeal of his conviction or in post-conviction proceedings. *Id.* at 848-49; *see also Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992)(stating that "[p]rocedural default . . . occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the *habeas* petition, be presented to the state court" and that "[i]ssues which were *never* raised in the state courts are the proper subject of procedural default in this collateral review under § 2254"). Therefore, a petitioner must pursue his appellate right "to the highest state court to preserve federal review." *Grigsby v. Cotton*, 456 F.3d 727, 732 (7th Cir. 2006).

A federal court can review procedurally defaulted claims if a petitioner "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure," or if the refusal to review would result in a "fundamental miscarriage of justice." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). A petitioner can establish cause by "showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). To establish prejudice, a petitioner must show that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A miscarriage of justice exists "where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" and the petitioner can "show that it is more likely than not that no reasonable juror would have convicted him," but for the alleged constitutional violation. *Rodriguez*, 193 F.3d at 917 (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

I. State's Knowing and Intentional Use of Perjured Testimony (Claim 1)

Garry argues in Claim 1 that "the State knowingly and intentionally used, and let go, uncorrected perjured testimony of its main, and only, witness throughout the course of [his] trial." (Pet. 5). Gary alleges that the State's main witness, the victim,

committed perjury on ten different instances during her testimony. Garry further claims that the victim's perjury is apparent because the victim's testimony was inconsistent with the testimony of Police Officer Eric Waggoner ("Waggoner"), another State witness. Garry further contends that the victim's testimony contradicts both the victim's earlier statements and Waggoner's testimony at the preliminary hearing.

On May 17, 2001, while Garry's direct appeal was pending, Garry filed a *pro se* post-conviction petition to the Circuit Court of Macon County claiming that the State knowingly and intentionally suborned perjury at Garry's preliminary hearing and that the State knowingly and intentionally suborned perjury at Garry's trial. The State filed a motion to dismiss, and the court granted the motion to dismiss on March 24, 2003. Garry then appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, reiterating his claims that the State knowingly and intentionally suborned perjury at Garry's preliminary hearing and that the State knowingly and intentionally suborned perjury at Garry's trial. On January 13, 2005, the Illinois Appellate Court affirmed the dismissal of Garry's post-conviction petition. Finally, on March 24, 2005, Garry filed a petition for leave to appeal in the Illinois Supreme Court, arguing that the State suborned and failed to correct perjury at Garry's trial and preliminary hearing. The Illinois Supreme Court denied the petition on May 25, 2005. Thus, Gary has exhausted his Illinois state court remedies by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" and

6

we will examine the merits of Garry's constitutional claim that the State knowingly suborned perjury at Garry's trial. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The knowing use of perjured testimony against a criminal defendant is unconstitutional. *Napue v. Ill.*, 360 U.S. 264, 269-70 (1959). In order to obtain *habeas* relief based on perjured testimony used by the prosecutor at trial, a petitioner must show: "(1) that the prosecution indeed presented perjured testimony, (2) that the prosecution knew or should have known of the perjury, and (3) that there is some likelihood that the false testimony impacted the jury's verdict." *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002). Additionally, "mere inconsistencies in the testimony of a government witness fall short of establishing that the government knowingly used false testimony and 'the alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence.'" *Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001).

On appeal from the dismissal of Garry's post-conviction petition, the Illinois Appellate Court considered Garry's claim of perjury relating to the victim's testimony and stated that "[Garry's] allegations, supported by the record and accompanying documents, d[id] not demonstrate a substantial showing that the State *knowingly* presented false testimony at [Garry's] trial." *People v. Garry*, No. 4-04-0310, at 10 (Ill. App. Ct. 2005)(emphasis in original). The Illinois Appellate Court further found that:

> In this case, 9 out of 10 instances of alleged false testimony by [the victim] related not to [Garry's] participation in the July 11, 1999, incident, but to the participation of either [the co-defendant] or the third assailant. The only

7

> instance of alleged false testimony by [the victim] related to [Garry's] participation was her testimony that when [Officer] Waggoner kicked open her apartment door, [Garry] was still sitting on top of her. Those alleged instances of false testimony simply were not material to [Garry's] guilt or innocence . . . We thus conclude that no colorable argument can be made that the trial court erred by dismissing this claim without an evidentiary hearing.

*Id*. at 11. Garry has provided this court with no new information in his Petition and we agree that there is insufficient evidence to conclude that the State knowingly presented perjured testimony. Further, Garry has only shown that there is a possibility that there was an inconsistency in the victim's testimony. Garry has not shown that the testimony was in fact inconsistent and he has not shown that the victim committed perjury. Even if Garry could show that the victim committed perjury, Garry has not shown that the prosecutor knew of the perjury or that the alleged perjury would have altered the jury's verdict. *See also McFowler v. Jaimet*, 349 F.3d 436, 454 (7th Cir. 2003)(stating that "inconsistencies in . . . witness['] testimony are not unusual . . ., and normally . . . are left for the fact finder to assess"). Based upon the failure on the part of Gary to even establish that the victim's testimony was perjured, we find that the decision of the Illinois Appellate Court affirming the trial court's decision relating to such testimony was not "unreasonable" or contrary to "clearly established federal law." 28 U.S.C. § 2254(d)(1),(2).

II. Ineffective Assistance of Trial and Appellate Counsel (Claims 2 and 3)

Garry argues that "trial and appellate counsel were ineffective for not raising

[the] perjury issues on [sic] direct appeal, trial, and[/]or post-trial motions." (Pet. 5). As to Claim 2, Garry alleges that his trial counsel was ineffective because his "trial counsel failed to properly conduct a cross-examination of the witness, but left it to co-defendants [sic] who's [sic] only priority is his client." (Pet. 5). As to Claim 3, Garry argues that his appellate counsel was ineffective because his "appellate counsel on direct appeal decided instead of raising the perjury issue [at] defendant [sic] request to raise a weaker issues [sic]." (Pet. 5). Respondent contends that Garry has procedurally defaulted on Claims 2 and 3.

On direct appeal of his conviction to the Illinois Appellate Court, with respect to ineffective assistance of counsel, Garry failed to raise any claims that counsel was ineffective at trial and only argued that: (1) the State did not meet its burden that he inflicted great bodily harm upon the victim; (2) the Illinois truth-in-sentencing provision, 730 ILCS 5/3-6-3(a)(2)(iii), is unconstitutional; (3) the Illinois extended-term sentencing provision, 730 ILCS 5/5-5-3.2(b)(1), is unconstitutional; and (4) the Trial Court erred by considering an improper aggravating factor in sentencing him. (G Ex. B). On July 6, 2001, the Illinois Appellate Court affirmed Garry's conviction and Garry filed a petition for leave to appeal in the Illinois Supreme Court. However, in Garry's petition to the Illinois Supreme Court, he did not contend that either his trial counsel or appellate counsel were ineffective. The Illinois Supreme Court denied the petition on October 3, 2001.

On May 17, 2001, while Garry's direct appeal was pending, Garry filed a *pro se* post-conviction petition in Macon County Circuit Court, where he again failed to

9

raise the issue of ineffective assistance of counsel. Garry was subsequently appointed counsel, who did not file an amended petition claiming ineffective assistance of trial counsel. The State filed a motion to dismiss, which the court granted on March 24, 2003, and Garry appealed to the Illinois Appellate Court. Garry's appeal to the Illinois Appellate Court also lacked any reference to the issues of ineffective assistance of counsel. On appeal, Garry's appointed counsel filed a motion to withdraw as appellate counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Garry was given an opportunity to respond and objected to his counsel's motion to withdraw, arguing that the Trial Court failed to comply with Illinois law pertaining to post-conviction petitions. The Illinois Appellate Court granted counsel's motion to withdraw and affirmed the judgment on January 13, 2005. Following this decision, Garry filed a *pro se* petition for leave to appeal to the Illinois Supreme Court and once again did not raise the issues of ineffective assistance of trial or appellate counsel, but did raise a claim of inadequate assistance of post-conviction counsel. Thus, at no time did Garry present his ineffective assistance of trial and appellate counsel claims to the Illinois Supreme Court during either the direct appeal process or the post-conviction appeal process and his ineffective assistance of counsel claims in Claims 2 and 3 are therefore procedurally defaulted. *See Grigsby*, 456 F.3d at 732 (stating that a petitioner must pursue appellate review "to the highest state court to preserve federal review"); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

Since Garry did not complete a full round of appellate review of Claims 2 and

3, he is procedurally defaulted from bringing Claims 2 and 3, unless he can show cause for his failure to raise them at the time, and actual prejudice, or that the refusal to review the issues would result in a "fundamental miscarriage of justice." *See O'Sullivan*, 526 U.S. at 848 (stating that "failure to present three of [petitioner's] federal *habeas* claims to the Supreme Court of Illinois in a timely fashion . . . resulted in a procedural default of those claims"); *Farrell v. Lane*, 939 F.2d 409, 410-12 (7th Cir. 1991)(stating that "[a] federal court cannot address the merits of constitutional claims brought in a petition for *habeas corpus* relief unless the state courts have had a full and fair opportunity to review them" and that failure to do so will constitute a procedural default).

Garry contends that his post-conviction appellate counsel should have raised the issues of ineffective assistance of counsel on appeal and Garry alleges that such is the reason why the issues were not raised prior to the instant petition for *habeas corpus*. However, Garry's appointed counsel filed a motion to withdraw as appellate counsel. Garry was given the opportunity to respond and Garry did not raise the issues of ineffective assistance of trial counsel or appellate counsel, and the Illinois Appellate Court granted his appellate counsel's motion to withdraw and the Illinois Appellate Court affirmed the Circuit Court's denial of post-conviction relief. Further, Garry could have raised the issues of ineffective assistance of trial and appellate counsel in his *pro se* petition for leave to appeal to the Illinois Supreme Court, but Garry failed to do so. Garry has not shown that he had cause for his failure to seek leave to the Illinois Supreme Court, and that refusal by this court to

review the issues will result in a fundamental miscarriage of justice. *See Todd v. Schomig*, 283 F.3d 842, 848-49 (7th Cir. 2002)(rejecting petitioner's defaulted claims and refusing to address the cause or actual innocence issues where the petitioner did not raise them); *Rodriguez*, 193 F.3d at 917. Thus, Claims 2 and 3 have been procedurally defaulted by Garry. Additionally, even if Garry's claims were not procedurally defaulted, we find that the claims are not meritorious. *See Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004)(stating that "[a]n ineffective assistance claim has two components" which require a petitioner to show that "counsel's performance was deficient" and that "the deficiency prejudiced his defense"). Rather, the record clearly indicates that such counsel provided Garry with adequate representation. *Id*. (stating that "[t]o establish deficient performance, a petitioner must demonstrate that the representation 'fell below an objective standard of reasonableness'")(quoting in part *Strickland v. Washington*, 466 U.S. 668 (1984)).

III. Post-Conviction Counsel (Claim 4) and Sentencing (Claim 5)

As noted above, a district court may entertain a *habeas corpus* petition from a "person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Seventh Circuit has stated that:

> [E]rrors of state law in and of themselves are not cognizable on *habeas* review. *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The remedial power of a federal *habeas* court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a

12

> right under federal law can the federal court intervene. *Id*. To say that a petitioner's claim is not cognizable on *habeas* review is thus another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

*Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).

### A. Ineffective Assistance of Post-Conviction Counsel (Claim 4)

Garry argues in Claim 4 that his post-conviction counsel provided "inadequate assistance" since his counsel: (1) "failed to amend [his] post-conviction petition to further establish [his] claim of ineffective assistance of trial and appellate counsel;" (2) "never raised petitioners [sic] claim of ineffective assistance of trial and appellate counsel;" and (3) "argued that as a matter of law fundamental fairness, the rule of waiver should not apply to the perjury claim." (Pet. 6). Respondent contends that Garry's claim of ineffective assistance of post-conviction counsel presents "issues of state law, and are therefore not cognizable on *habeas* review. (Mot. 10).

Under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, Illinois trial courts may appoint post-conviction counsel to a person who is able to establish that he is without means to retain such counsel. 725 ILCS 5/122-4. The appointment and performance of the post-conviction counsel is governed by Illinois Supreme Court Rules. *Id*. By allowing state prisoners a right to counsel on collateral appeal, Illinois exceeds the guarantees of the federal Constitution, which does not provide state prisoners with the right to counsel on collateral appeal under the Sixth

13

Amendment. *See Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003)(stating that "there is no constitutional right to an attorney in state post-conviction proceedings"); *see also Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004)(stating that effective counsel for collateral proceedings is not guaranteed and thus not grounds for *habeas* review). Additionally, pursuant to 28 U.S.C. § 2254(I), "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I). Thus, since Garry does not have a federal right to post-conviction counsel, Claim 4 is not cognizable on *habeas* review.

### B. Extended-Term Sentence (Claim 5)

Garry argues in Claim 5 that the Trial Court's imposition of an extended-term sentence is unconstitutional because it violates the Illinois constitution. Garry contends that his sentence for armed violence violates Illinois constitution because he received an extended-term sentence for a less serious offense. Respondent contends that Garry's claim of ineffective assistance of post-conviction counsel presents "issues of state law, and are therefore not cognizable on *habeas* review. (Mot. 10).

The Trial Court sentenced Garry pursuant to 720 ILCS 5/33A-3(a), which was later amended. *See People v. Garry*, No. 4-04-0310 (Ill. App. Ct. 2005)(stating Garry's sentence and history of law). The Illinois Supreme Court subsequently found that the amended law violated the Illinois constitution's single subject clause. *See id.* (stating history of law); *see also* Ill. Const., art. IV § 8(d) (single subject

clause). On March 24, 2006, Garry filed a *pro se* post-conviction petition for leave to appeal to the Illinois Supreme Court in which he argued that the Illinois law under which he received an extended-term sentence is unconstitutional because the law violated the Illinois constitution's single subject clause. (G Ex. K at 11). The federal Constitution does not contain a "single subject clause" and, thus, Garry's argument is strictly a matter of Illinois state law and Claim 5 is not cognizable on *habeas* review. *See Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003)(stating that "[f]ederal *habeas corpus* relief does not lie for errors of state law"); *see also Schlesinger v. Councilman*, 420 U.S. 738, 755 (1975)(noting that the state court "alone can define and interpret state law").

This court may review Garry's Petition if the state court's errors deprived Garry of a right under federal law and resulted in a fundamental unfairness in violation of due process. *Lechner*, 341 F.3d at 642 (citing *Estelle*, 502 U.S. at 67-68). Such fundamental unfairness occurs only if the state law "rulings were so prejudicial that they compromised the petitioner's right to a fundamental fair trial." *Anderson v. Sternes*, 243 F.3d 1052, 1053 (7th Cir. 2001)(noting "that the error must have produced a significant likelihood that an innocent person has been convicted").

In July 1999, the State of Illinois charged Garry with home invasion, armed robbery, and armed violence. The Illinois Appellate Court stated that at Garry's November 1999 trial:

> [The victim] testified that around 5:15 a.m. on July 11, 1999, she awakened to find three masked men in her apartment. The intruders, one of whom [the victim] later identified as [Garry], tried to intimidate [the victim] into giving

15

them money and drugs by opening and closing the slides on their automatic pistols and pointing the weapons at her. When [the victim] told them she did not have any money, [Garry] and his co-defendant, Brandon Pugh, began beating the left side of her head and hip with their weapons. [The victim] stated that they hit her in the head so many times that she "actually saw a vision of Jesus Christ on the wall." Pugh continued to beat [the victim] with his gun, and with the help of the third intruder, held her down while [Garry] straddled her. [Garry] then put one of his hands around [the victim's] throat and choked her so hard that she gasped for air, urinated on herself three times, and started menstruating. The beating continued for about 30 minutes, until police officers arrived and kicked open the apartment door. At that point, [Garry], Pugh, and the other intruder fled through a window, taking [the victim's] car keys and a gold necklace.

*People v. Garry*, 752 N.E.2d 1244, 1246-47 (Ill. App. Ct. 2001). Based upon these facts and the evidence presented at trial, the jury found Garry guilty of home invasion, armed robbery, and armed violence. In January 2000, the Trial Court conducted a sentencing hearing, which included evidence that the victims injuries consisted of: "(1) a quarter-inch-long laceration near her left eyebrow, which required three or four sutures, (2) bruises to both eyelids, (3) a mild hemorrhage in her left eye, and (4) a 10-inch-wide bruise on her left thigh." *Id*. at 1247. In determining Garry's sentence, the Trial Court also considered the presentence report that stated that: "(a) [Garry] was 24 years old at the time of the incident; (b) he had prior juvenile convictions; (c) in 1994, he was convicted of home invasion, a Class X felony; and (d) he committed the present offenses seven months after being released from prison." *Id*. After considering Garry's statement to the court, the evidence, and counsel's arguments, the Trial Court sentenced Garry to an extended-term of forty

years in prison for the armed violence conviction, based on his prior Class X felony conviction, twenty five years in prison for the home invasion conviction, and twenty five years in prison for the armed robbery conviction, with all sentences to run concurrently. Additionally, the Trial Court ordered that Garry serve eighty five percent of his sentence, pursuant to the truth-in-sentencing provision in 730 ILCS 5/3-6-3(a)(2)(iii) upon agreeing with the jury's finding that Garry had inflicted great bodily harm upon the victim.

The evidence at the sentencing hearing and the Trial Court's use of such evidence can hardly be "rulings [that] were so prejudicial that they compromised the petitioner's right to a fundamental fair trial." *Anderson*, 243 F.3d at 1053. Additionally, pursuant to 730 ILCS 5/5-5-3.2 and 730 ILCS 5/5-8-2, Garry was subject to be sentenced to an extended-term sentence due to his prior felony, which provided that "for a Class X felony, a term shall be not less than 30 years and not more than 60 years." 730 ILCS 5/5-8-2(a)(2). Finally, Garry's argument that the Trial Court's imposition of an extended-term sentence violated the Illinois constitution does not give rise to a federal claim. Based on the above, Garry has failed to make a substantial showing of the denial of a constitutional right and Claim 5 is not cognizable on *habeas* review.

## CONCLUSION

Based on the foregoing analysis, we deny Garry's petition for writ of *habeas corpus*.

_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: February 13, 2007